UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| JOVANI JACOBO,<br><br>　　　　　　Petitioner,<br><br>vs.<br><br>YANKTON FEDERAL PRISON CAMP,<br>WARDEN  TELLEZ,<br><br>　　　　　　Respondent. | 4:19-CV-04050-KES<br><br><br><br>REPORT AND RECOMMENDATION |

## INTRODUCTION

This matter is before the court on the *pro se* habeas petition of Jovani Jacobo pursuant to 28 U.S.C. § 2241.  See Docket No. 1.  Mr. Jacobo is a federal prisoner at the Yankton Federal Prison Camp in Yankton, South Dakota.  Id.  Now pending is a motion for summary judgment by respondent. See Docket No. 10.  Mr. Jacobo resists the motion.  See Docket No. 14.  This matter was referred to this magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and the October 16, 2014, standing order of the Honorable Karen E. Schreier, United States District Court Judge.

## FACTS

Respondent submitted a statement of undisputed material facts in support of his motion.  See Docket No. 12.  Mr. Jacobo did not respond to that statement of facts as required by local rule.  See DSD LR 56.1.  Nevertheless, the court includes in the below statement of facts those facts Mr. Jacobo did assert in his response in opposition to respondent's motion.

Mr. Jacobo is incarcerated at the Federal Prison Camp in Yankton, South Dakota and has a projected release date of August, 2025, via good conduct time release. On April 16, 2018, corrections officer J. Johnson entered Kingsbury Range 4, Room 304, at aproximately 2:25 p.m. Mr. Jacobo became visually startled upon seeing Officer Johnson and appeared to place something near the pillow area of bunk K04-045L. Bunk K04-045L was not Mr. Jacobo's bunk.

Officer Johnson looked under the pillow on the K04-045L bunk and discovered a cell phone. Officer Johnson asked Mr. Jacobo if the phone belonged to him. Mr. Jacobo replied, "It's not mine. I don't know anything about it."

Officer Johnson examined the phone and noted there was a message on the front of the phone from "Chavez." Officer Johnson found this matched a person on Mr. Jacobo's approved visitor list named "Chavez." Officer Johnson also observed a missed call from a specific phone number on the phone. Upon consulting with the Operations Lieutenant, Officer Johnson was able to determine this specific phone number was on Mr. Jacobo's list of phone contacts.

Officer Johnson also spoke to the inmate assigned to bunk K04-045L where the phone was discovered. This inmate claimed ownership of the phone, but also told Officer Johnson he let other inmates use the phone.

On the same day at 7:03 p.m., corrections officer K. Joy presented Mr. Jacobo with a written incident report stating the above facts and charging him with possession of a cellular telephone, an infraction of prison rules.

Officer Joy advised Mr. Jacobo of his right to remain silent, his right to staff representation, and his right to a hearing before a disciplinary hearing officer ("DHO"). Mr. Jacobo did not ask for staff representation. When presented with the written incident report, Mr. Jacobo stated, "The phone is not mine. That is not even my bunk. I live in 44U. I don't know anything about this phone. Why am I the only one receiving a shot when I was not the only person in the room. There was another person in the room."

A hearing was held before a DHO on April 25, 2018. Mr. Jacobo was again advised of his rights. He denied the charge of possession of a contraband cell phone. Mr. Jacobo waived his right to staff representation. Mr. Jacobo called another prisoner, BC, to testify. BC testified he was in the gym at the time of the incident. An officer approached with a cell phone in his hand and BC told the officer the cell phone belonged to him. Mr. Jacobo testified he was "Not guilty, I never used this phone, don't know nothing of this phone."

Other evidence considered by the DHO were the written reports generated by Officer Johnson detailed above and Mr. Jacobo's denial of the charges, including the statements made by him when the incident report was presented to him. The DHO did not review any confidential information or any other information.

The DHO found against Mr. Jacobo. The DHO concluded Mr. Jacobo had the phone in his hand when Officer Johnson entered the room and Mr. Jacobo stashed the phone under the pillow on bunk K04-045L, where Officer Johnson discovered it. The DHO credited BC's testimony that the phone belonged to him, but also credited BC's statement to Officer Johnson

that he allowed other inmates to use his phone.  The DHO also noted that the name "Chavez" and the missed phone call listed on the phone both corresponded to names and phone numbers on Mr. Jacobo's visitor/telephone list.

As a result of finding Mr. Jacobo had violated prison rules by possessing a cell phone, the DHO imposed the sanction of loss of good conduct time. Mr. Jacobo was not given the benefit of documentary evidence in the form of a forensic analysis of the seized cell phone to use at his DHO hearing.

## DISCUSSION

**A.    Scope of a § 2241 Petition**

A federal prisoner may seek habeas relief under 28 U.S.C. § 2255 or § 2241.  Each statute encompasses separate types of claims.  The following are types of claims cognizable under § 2241 and not under § 2255:

- (1) denial of sentence credits for good time or pretrial detention, Reno v. Koray, 515 U.S. 50, 52-53 (1995); Bell v. United States, 48 F.3d 1042, 1043-44 (8th Cir. 1995);

- (2) transfers or other changes in the type of detention, United States v. Fuller, 86 F.3d 105, 106 (7th Cir. 1996);

- (3) prison disciplinary procedures, Kingsley v. United States Bureau of Prisons, 937 F.2d 26, 30 n.5 (2d Cir. 1991); and

- (4) parole determinations, Sherman v. US Parole Comm'n, 502 F.3d 869 (9th Cir. 2007).

A § 2255 motion must be filed in the sentencing court, but a § 2241 motion must be filed in the district where the petitioner is incarcerated. See 28 U.S.C. § 2255(e); Rules 3(b) and 4(a), 28 U.S.C. foll. § 2255; Rumsfeld v. Padilla, 542 U.S. 426, 442 (2004).  United States v. Thompson, 297 Fed. Appx.

4

561, 562 (8th Cir. 2008) (a motion for reduction of sentence that seeks immediate or speedier release should be interpreted as a habeas petition under § 2241; before filing a § 2241 petition, the petitioner must demonstrate that he had presented his claim to the BOP before seeking habeas relief).

Also, a § 2241 petitioner must exhaust administrative remedies before filing. Thompson, 297 Fed. Appx. at 562; United States v. Chappel, 208 F.3d 1069 (8th Cir. 2000). Section 2255 petitioners do not have to satisfy this requirement.

Finally, the one-year statute of limitations applicable to § 2255 petitions does **not** apply to § 2241 petitions. Morales v. Bezy, 499 F.3d 668, 672 (7th Cir. 2007). Nor does a § 2241 petitioner have to seek a certificate of appealability in order to appeal the denial of his petition. Binford v. United States, 436 F.3d 1252, 1253 n.2 (10th Cir. 2006); Murphy v. United States, 199 F.3d 599, 601 n.2 (2d Cir. 1999). In addition, when a § 2241 petition is filed first and then a § 2255 petition later, the § 2255 petition is not considered "second or successive." The same holds true when the order of filing petitions is reversed. Stantini v. United States, 140 F.3d 424, 426-27 (2d Cir. 1998); Romandine v. United States, 206 F.3d 731, 736 (7th Cir. 2000). In fact, the gatekeeping provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244, do not apply to § 2241 petitions. Haughton v. United States, 2009 WL 1562750, *2 (D. Minn. 2009); 28 U.S.C. § 2244(a) – (d). Although there is no prohibition on second or successive § 2241 petitions, a petitioner having once litigated a claim in a § 2241 petition may not relitigate

the same claim in a subsequent § 2241 petition. See 28 U.S.C. § 2244(a); Queen v. Miner, 530 F.3d 253, 255 (3d Cir. 2008).

The fact that a petitioner is procedurally barred from filing under § 2255 does not render the remedy under § 2255 "inadequate" or "ineffective" so as to make resort to § 2241 appropriate. United States v. Lurie, 207 F.3d 1075, 1077 (8th Cir. 2000); Tolliver v. Dobre, 211 F.3d 876, 878 (5th Cir. 2000).

Mr. Jacobo's § 2241 petition attacks the calculation of his sentence by the BOP (i.e. the revocation of good time credit), so his claim is properly before the court pursuant to § 2241.

**B.     Standard Applicable to a Summary Judgment Motion**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

The court must view the facts, and inferences from those facts, in the light most favorable to the nonmoving party. See Matsushita Elec. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Helton v. Southland Racing Corp., 600 F.3d 954, 957 (8th Cir. 2010) (per curiam). Summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Allison v. Flexway Trucking, Inc., 28 F.3d 64, 66 (8th Cir. 1994).

The burden is placed on the moving party to establish both the absence of any genuine issue of material fact and that the moving party is entitled to

judgment as a matter of law. FED. R. CIV. P. 56(a). Once the movant has met its burden, the nonmoving party may not simply rest on the allegations in the pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Anderson, 477 U.S. at 256; FED. R. CIV. P. 56(e) (each party must properly support its own assertions of fact and properly address the opposing party's assertions of fact, as required by Rule 56(c)).

The underlying substantive law identifies which facts are "material" for purposes of a motion for summary judgment. Anderson, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. (citing 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2725, at 93–95 (3d ed. 1983)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247–48.

Essentially, the availability of summary judgment turns on whether a proper jury question is presented: "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

Though *pro se* litigants like Mr. Jacobo are entitled to a liberal construction of their pleadings, FED. R. CIV. P. 56 remains equally applicable to them.  Quam v. Minnehaha Co. Jail, 821 F.2d 522, 522 (8th Cir. 1987).  The district court is not required to "plumb the record in order to find a genuine issue of material fact."  Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 260 (8th Cir. 1996).  Courts must remain sensitive, however, "to the special problems faced by prisoners attempting to proceed *pro se* in vindicating their constitutional rights, and [the Eight Circuit does] not approve summary dismissal of such *pro se* claims without regard for these special problems."  Nickens v. White, 622 F.2d 967, 971 (8th Cir. 1980).  "When dealing with summary judgment procedures the technical rigor is inappropriate where . . . uninformed prisoners are involved."  Ross v. Franzen, 777 F.2d 1216, 1219 (7th Cir. 1985).

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall issue in favor of the movant only if there is no genuine dispute as to any material fact *and* the movant is entitled to judgment as a matter of law.  Therefore, even where a summary judgment motion is unopposed, the court must still determine if summary judgment is appropriate.  See Canada v. Union Elec. Co., 135 F.3d 1211, 1213 (8th Cir. 1997) (failure by nonmoving party to respond to summary judgment motion is not dispositive of the motion); United States v. One Parcel of Real Property, 27 F.3d 327, 329 n.1 (8th Cir. 1994) (same); FED. R. CIV. P. 56, Advisory Committee Notes to 2010 amendment, subdivision (e) (stating "summary judgment cannot be granted by default even if there is a complete failure to respond to the motion.").

### C.  Analysis of Mr. Jacobo's Claims

#### 1.  The Due Process Standard Applicable to Mr. Jacobo's Claims

In his § 2241 petition, Mr. Jacobo alleges his procedural due process rights were violated by the disciplinary proceedings which resulted in his loss of good time credits.  See Docket No. 1.  Specifically, he alleges he should have been given the benefit of a forensic analysis of the cell phone at issue.  Id.  See also Docket No. 14 at p. 2.  He also appears to argue the evidence did not support the DHO's decision because the bunk where the cell phone was seized was not his bunk and because another inmate admitted ownership of the cell phone.  Id.

The procedural due process clause of the Fourteenth Amendment provides that some form of notice and an opportunity to be heard must be afforded before the state may deprive a citizen of life, liberty or property.  Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 12 (1979).  What procedures the due process clause requires are flexible and variable depending upon the circumstances and the right involved.  Mathews v. Eldridge, 424 U.S. 319, 334-35 (1976).  Prisoners do not "shed all constitutional rights at the prison gate, but lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."  Sandin v. Conner, 515 U.S. 472, 485 (1995) (cleaned up).  A prisoner has a protected liberty interest in statutory good time credits that cannot be taken from him in a prison disciplinary proceeding without due process of law.  Espinoza v. Peterson, 283 F.3d 949, 951-52 (8th Cir. 2002).

9

In Wolff v. McDonnell, 418 U.S. 539, 554 (1974),[1] the Supreme Court addressed structural due process requirements in prison disciplinary proceedings where good-time credits are at stake. The Court held the amount of process required before a deprivation can be effected depends on the importance of the liberty interest at stake. Id. at 560. The Court noted that deprivation of good time credits was different from the deprivation of liberty suffered by a parolee or probationer. Id. For the latter, the liberty interest means the difference between freedom or being confined in prison. Id. at 560-61. For prisoners deprived of good time, the difference is not as stark: the deprivation may or may not postpone the prisoner's release date, it may or may not extend the maximum term of incarceration served, and good time may be restored. Id. at 561. As such, the Court held that revocation of good time was "qualitatively and quantitatively different from the revocation of parole or probation." Id.

The Court held that three requirements must apply in the prison disciplinary proceeding: (1) the prisoner must be given written notice of the claimed violation at least 24 hours in advance of the hearing "to enable him to

---

[1] The Wolff analysis was later displaced by a different analysis asking whether discipline meted out to a prisoner imposed atypical and significant hardship on the prisoner in relation to ordinary incidents of prison life. See Sandin, 515 U.S. at 484. The new Sandin analysis applies when the prison discipline does not affect the length of the prisoner's incarceration. Id. at 487. The Wolff analysis continues to apply where the disciplinary proceeding results in the denial of good time credits. Espinoza, 283 F.3d at 951-52. Cf. Wycoff v. Nichols, 94 F.3d 1187, 1190 (8th Cir. 1996) (in light of the fact that prison eventually restored prisoner's good time credits, the court declined prisoner's invitation to apply Wolff to due process claim because the revocation of good time credits was initially part of his discipline).

marshal the facts and prepare a defense"; (2) the factfinder must give a written statement of the evidence relied upon and the reasons for the disciplinary action taken, so as to ensure any collateral consequences of the action are not based on a misunderstanding of the decision and to keep the decision-makers "honest" because they know that their decision will be subject to later scrutiny; and (3) the right on the part of the accused inmate to "call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Id. at 563-66.  Dible v. Scholl, 506 F.3d 1106, 1110 (8th Cir. 2007) (same).

Due process of law in prison disciplinary proceedings where good time credits are at stake requires that "some evidence" support the conclusion the prisoner violated prison rules. Superintendent, Mass. Corr. Instit., Walpole v. Hill, 472 U.S. 445, 455 (1985).  "The requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits.  Ascertaining whether the 'some evidence' standard is satisfied does not require examination of the entire record, independent assessment of witnesses' credibility, or weighing of the evidence, but, instead, the relevant question is whether there is any evidence in the record to support the disciplinary board's conclusion." Id. (cleaned up).  Put another way, the due process clause in this context protects against arbitrary revocation of good time credits by prison officials.  Id. at 454-55.

Federal courts are not part of the appellate procedures for prison disciplinary decisions. Toombs v. Hicks, 773 F.2d 995, 997 (8th Cir. 1985). Sanctions imposed by prison disciplinary bodies should be accorded deference

by the courts unless they are "wholly unsupported by the record." Gomez v. Graves, 323 F.3d 610, 613 (8th Cir. 2003).

### 2. Applying the law to Mr. Jacobo's Claim

Applying the above law to the facts of Mr. Jacobo's case, it is clear the respondent did not violate his due process rights through the disciplinary procedure that resulted in the revocation of his good time credits. The three requirements of Wolff were observed: (1) Mr. Jacobo got written advance notice of the charges against him, (2) he was given the right to call witnesses (which he did—BC), and present any documentary evidence, and (3) the DHO issued a written decision explaining her decision and the evidence she relied on in support of that decision. Also, the DHO's decision was supported by "some evidence."

Mr. Jacobo insists due process was violated here because (1) the phone was not found on his bunk, (2) another prisoner claimed the phone as his own, and (3) he was denied access to a forensic analysis of the phone. See Docket No. 14 at p. 2. But this does not demonstrate that the DHO's decision was not supported by "some evidence."

As to point number one, the DHO observed that Officer Johnson saw Mr. Jacobo reach into the area where the cell phone was found after Officer Johnson saw Mr. Jacobo visibly startle upon seeing the officer. The DHO credited Officer Johnson's version of the events. Under those facts, it makes little difference whether the bunk belonged to Mr. Jacobo or not—he was seen to have startled and then to have reached into the area where the cell phone was found. This is "some evidence" to support the DHO's conclusion that

Mr. Jacobo deposited the phone in the location where it was subsequently found by Officer Johnson.

As to point number two, the other prisoner, BC, claimed the cell phone as his own, but also stated he allowed other prisoners to use it. The prison regulation at issue does not prohibit only the *owning* of cell phones in prison—it also prohibits the *possessing* of cell phones in prison. And other evidence existed which the DHO relied upon to conclude that Mr. Jacobo had "possessed" the cell phone—namely that the phone had been used to communicate with "Chavez," a person on Mr. Jacobo's visitor list and that the phone had a record of a missed phone calls from a phone number which was on Mr. Jacobo's visitor/phone list. This is certainly "some evidence" that Mr. Jacobo "possessed" the cell phone.

Finally, as to Mr. Jacobo's insistence that he should have been provided the results of a forensic examination of the phone, the court holds such evidence under these facts was not required by the due process clause. As discussed above, there was "some evidence" in support of the DHO's decision. Furthermore, a prisoner's due process right to call witnesses and present documentary evidence in his defense at a disciplinary proceeding is not unlimited. Rather, that opportunity is limited to the extent it is consistent with institutional safety and correctional goals. Hill, 472 U.S. at 454. There may be circumstances where forensic evaluation of a contraband cell phone is necessary to determine possession. Here, that the facts do not present such circumstances.

## CONCLUSION

Based on the foregoing facts, law and analysis, this magistrate judge respectfully recommends granting respondent's motion for summary judgment [Docket No. 10] and dismissing Mr. Jacobo's § 2241 petition with prejudice.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 1st day of May, 2019.

BY THE COURT:

_____
VERONICA L. DUFFY
United States Magistrate Judge